J-A18037-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL R. MERRINGER, SR. | : | |
| | : | |
| Appellant | : | No. 1457 WDA 2022 |

Appeal from the Judgment of Sentence Entered June 8, 2022
In the Court of Common Pleas of Somerset County Criminal Division at
No(s): CP-56-CR-0000417-2019

BEFORE: BENDER, P.J.E., LAZARUS, J., and KUNSELMAN, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED: November 6, 2023**

Michael Merringer appeals from the judgment of sentence entered after he was convicted of thirty-three sexual offenses. He claims that he was denied his constitutional rights to a speedy trial, and he challenges the admission of certain testimony against him. We conclude that this prosecution did not violate his right to a speedy trial. However, based on our review of the testimony, we are bound to reverse and remand for a new trial.

On April 15, 2019, Pennsylvania State Police Corporal Shawn Reynolds filed a criminal complaint charging Merringer with sexual offenses against A.D. and N.M., two of his children, between 1996 and 2012. The charges were held for court.

Merringer moved to continue trial three times beginning on September 11, 2019, each of which the trial court granted. On July 22, 2020, the trial court granted the Commonwealth's first request to continue "due to the

unavailability of witnesses." Order, 7/23/20. On September 23, 2020, over Merringer's objection, the trial court granted the Commonwealth's second continuance request. Order, 9/28/20.

The trial court ordered a final continuance on October 1, 2021:

> [A]fter a previous conference with counsel for the Commonwealth and the defendant, the jury trial scheduled for October 18-22, 2021 is hereby CONTINUED and RESCHEDULED for February 28, 2022 through March 4, 2022, over the objection of the Commonwealth. It appears that criminal charges have been filed against the defendant's wife, a proposed material witness of the defendant and, consequently, defendant has asserted prejudice in proceeding with this trial until, at a minimum, a preliminary hearing has been held on this related matter. We hereby grant the continuance without assigning any of the time delay to either party and have it attributed to procedures accepted by the court. The parties shall be prepared for the jury selection on February 28, 2022 and begin the trial immediately following the jury selection.

Order, 10/4/21.

The case proceeded to trial as scheduled, beginning with jury selection on February 28, 2022. A.D. and N.M. testified about years of sexual abuse. Merringer testified on his own behalf denying the abuse and called additional witnesses in support. Relevant to this appeal, the last two witnesses in the Commonwealth's case-in-chief were Jo Ellen Bowman and Corporal Reynolds.

The Commonwealth offered Ms. Bowman as an expert witness in the field of child sexual assault and children's behavioral responses to sexual assault. When the Commonwealth was questioning Ms. Bowman on her qualifications, the trial court interrupted to limit her testimony:

[The Assistant District Attorney (ADA):] Have you attended trainings on the medical examination?

A.    I have.

Q.    Can you talk about those a little bit?

A.    It's really important for [me] as a [Child Advocacy Center] staff person to understand medical findings, be able to interpret the reports.  And also to understand and . . . help non-offending caregivers, parents, to understand the purpose of the medical exam.

A lot of times people think that if there's been a penetration, if there's allegations of penetration, that there's going to be medical evidence.  You know, it's they think something is going to show up at the doctor's, but it's not uncommon for there not to be any medical evidence, especially with a delayed report.

And we need to understand, I have been to a lot of trainings where . . . I've been trained by a physician where we understand that the vaginal area and the rectum heals very quickly.  And even if there has been trauma, if it's not examined pretty quickly after the trauma occurred, there's usually no medical finding of penetration.  And so most of our cases after the doctor has seen them, it will say that there is no medical indicators, you know, there is no physical indicators of trauma.  But they said that does not rule out that the sexual assault occurred.  Because we have to understand, and . . . in my opinion, it's really important for us to help non-offending caregivers get that, because sometimes, you know, they're struggling with knowing that this might have occurred, and they're trying to sort everything out.

And sometimes they think that there's medical evidence and it gives them some [peace] of mind.  But it's really our role to explain to them that it's unlikely there will be medical evidence, and we explain that whole process to them so that there's no kind of -- we try to explain to them that just because there's no medical evidence doesn't mean it didn't happen.  We don't want them not to believe the child if there's [no] medical evidence.  I guess that's the easiest way.

THE COURT: [To the ADA,] we're getting into an area into specific opinions.  I want to make sure that we have her qualified as an expert before we get into some of the opinions she's already expressing.

[The ADA]: I have.

\* \* \*

[Defense counsel]: Your Honor, if I may add; the testimony she just offered is way outside the scope of what was included in the report she submitted to [prior counsel] on April 9th of 2021.

N.T., 3/3/22, at 3.16–3.18.

The trial court instructed Ms. Bowman to refrain from providing opinion evidence until she was qualified. *Id.* at 3.19. The court qualified Ms. Bowman to testify as an expert on victim responses and behaviors but advised that further medical testimony would exceed the scope of her expertise. *Id.* at 3.23–3.24. Ms. Bowman testified without further objection. *Id.* at 3.25–3.50.

The Commonwealth then called Corporal Reynolds to testify about his investigation, which included a three-hour recorded interview of Merringer on April 15, 2019. *Id.* at 3.77. Corporal Reynolds summarized his training in criminal investigation, including courses on interviews and interrogations. *Id.* at 3.55–3.56. He explained that an interview and an interrogation share the purpose of obtaining information. *Id.* at 3.78–3.80. Corporal Reynolds described how the police observe an interview subject's baseline verbal and non-verbal responses and then proceed to an interrogation phase, in which they might observe different "stressors." *Id.* at 3.80–3.81; *see id.* at 3.110 (explaining that shaking one's head side-to-side is "a stressor. It's a non-verbal behavior, characteristic").

The Commonwealth played portions of Merringer's interview for the jury. Before each clip, Corporal Reynolds testified what would occur, including his

- 4 -

observations about Merringer's phrasing, pacing, demeanor, and posture.

Prior to the fourth clip, Merringer objected to Corporal Reynolds' testimony:

[The ADA:] Corporal, moving to the next segment[,] what is the jury about to see?

A. So [] this next portion that you're going to see, prior to this, I gave the Affidavit of Probable Cause to the defendant and had him read it, took him approximately nine minutes to read.

After [] reading the affidavit, [he] sits back in his chair and he crosses his leg; his posture closes off; he takes his glasses off again and starts rubbing his eyes. These are non-behavioral -- or non-verbal behavior stuff that we see.

I ask him about the pornography in different parts of the house. He denies that. He does admit to having a paddle, but he denies -- he denies -- he says, ["]I don't think I ever used it[,] to tell you the truth,["] which is an embellishment, and we see embellishments. And embellishments are words o[r] phrase[s] that are used to try to give credence or --

[Defense counsel]: Your Honor, I'm going to object to testimony essentially trying to distinguish or dissect what Mr. Merringer's words are. The video is here. The video speaks for itself. The jury can judge credibility, that's what they're here for. But for [Corporal Reynolds] to try to dissect embellishments and the way [Merringer] delivers his words is outside the scope of what his investigative skills are.

THE COURT: I think the jury will be able to judge whether they agree or disagree with the testimony given.

So the objection is overruled.

[Corporal Reynolds]: I had a conversation about -- we talked about his work and how hard he worked. And I'm still trying to build rapport with him and develop themes that I can use later to try to relate to him.

And I asked him again, "Why would the kids make this up?" And his response was, "I wish I could tell you that." Again offers no motive. He discussed his childhood. He describes how he was abused by his father. He talks about how he would work a lot to not be home to avoid the abuse. I offered that Amanda did the

same thing to him, and there is some reaction, there is some nervous activity there. So I'll let you look at that.

*Id.* at 3.98–3.99.

The Commonwealth played the clip for the jury. Before other clips, Corporal Reynolds continued to preview when Merringer would add an "embellishment" or display non-verbal behaviors. *Id.* at 3.110–3.112, 3.115, 3.124, 3.126, 3.129–3.132. After the last clip,[1] Corporal Reynolds summarized the interview:

[The ADA:] At the end of the day, did you get a confession from [Merringer]?

A. No.

Q. Based on your training and experience; did he display any signs of deception to you?

A. Yes.

Q. What were they?

A. Like I described throughout, before we watched the different clips, couldn't sit still; crossing his arms and legs; constant nodding; the embellishment; just everything, everything that I discussed before each clip.

*Id.* at 3.136–3.137.[2]

_____

[1] The last clip ended with another officer asserting that "kids don't make that stuff up," mentioning Merringer's non-verbal behavior, and declaring: "You did something wrong. We know that." N.T., 3/3/22, at 3.133–3.135.

[2] The Assistant District Attorney spoke in closing arguments about Corporal Reynolds' interview of Merringer:

You know, Corporal Reynolds had you look at a number of things during that interview about body language. The defendant fidgeting, scratching his head, taking his glasses on and off. . . .

*(Footnote Continued Next Page)*

J-A18037-23

The jury found Merringer guilty of all 33 counts charged. On June 8, 2022, the trial court sentenced him to an aggregate term of 25 to 50 years of imprisonment. Merringer filed a timely post-sentence motion and two supplemental post-sentence motions. The trial court heard argument on September 22, 2022. On November 14, 2022, it entered an opinion and order denying Merringer's post-sentence motions. Merringer timely appealed. He and the trial court complied with Pennsylvania Rule of Appellate Procedure 1925.

Merringer presents four issues for review:

1. Was it error to deny [Merringer's] Motion for Arrest of Judgment based upon a violation of his right to a speedy trial as protected by the Constitutions of the United States and Pennsylvania?

2. Was it error to deny [Merringer's] Motion for New Trial based on his trial objection to Jo Ellen Bowman's testimony, as set forth in the second supplemental post-sentence motion?

3. Was it error to deny [Merringer's] Motion for New Trial based upon his trial objection to Cpl. Reynolds' improperly admitted opinion testimony concerning [Merringer's] vocal mannerisms, as set forth in the second supplemental post-sentence motion?

4. Did cumulative error accrue in this matter to [Merringer's] prejudice?

---

Corporal Reynolds is one of the best in the business. Top notch. Even defense counsel conceded that. **He has had the training. He's had the experience. He knows when someone is not being truthful.** And I'm telling you, ladies and gentlemen, this man, not truthful. Not truthful in the least.

N.T., 3/4/22, at 4.115 (emphasis added).

- 7 -

Merringer's Brief at 3 (issues reordered).

## 1. Constitutional Rights to a Speedy Trial

We address Merringer's speedy trial issue first because if it is successful, it results in discharge. *See, e.g.*, *Commonwealth v. Colon*, 87 A.3d 352, 361 (Pa. Super. 2014). Merringer argues that although time calculations under Pennsylvania's speedy trial rule were suspended due to the COVID-19 pandemic, the delay in prosecuting him nevertheless violated his underlying constitutional rights to a speedy trial.

The federal Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. Likewise, the Pennsylvania Constitution provides that "[i]n all criminal prosecutions, the accused hath a right . . . in prosecutions by indictment or information, [to] a speedy public trial by an impartial jury of the vicinage." Pa. Const. art. I, § 9.

The Supreme Court of the United States set out four criteria to be balanced in assessing whether a pretrial delay violated a defendant's Sixth Amendment right to a speedy trial: (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). The same test applies to a speedy trial claim under Article I, Section 9. *See Commonwealth v. DeBlase*, 665 A.2d 427, 432 (Pa. 1995); *Commonwealth v. Hailey*, 368 A.2d 1261, 1264 (Pa. 1977) (listing cases

- 8 -

applying the *Barker* factors to a Pennsylvania constitutional claim; rejecting an argument that the Article I, Section 9 requires anything more).

Regarding the fourth *Barker* factor, our Supreme Court has instructed that prejudice may be presumed upon a showing that the government was negligent in bringing the accused to trial. *DeBlase*, 665 A.2d at 437 & n.8 (analyzing *Doggett v. United States*, 505 U.S. 647 (1992)). However, where the Commonwealth is not at fault for the delay, the defendant must prove specific prejudice, which includes "(1) impairment of witness[es]' memories; (2) loss of evidence; (3) loss of witnesses; or (4) other specifically articulable facts representing a substantial interference with his ability to conduct a defense." *Id.* at 438 (citing *United States v. Marion*, 404 U.S. 307, 321–22 (1977)).

Pennsylvania Rule of Criminal Procedure 600 (previously Rule 1100) is intended to "give substance to the constitutional guarantee of a speedy trial for criminal defendants." *Commonwealth v. Johnson*, 409 A.2d 308, 310 (Pa. 1979) (citing *Commonwealth v. Hamilton*, 297 A.2d 127, 133 (Pa. 1972)). A speedy trial analysis "mandates a two-step inquiry:" first, whether the delay violated Rule 600, and if it did not, then second, whether it violated the constitutional guarantees of a speedy trial. *Colon*, 87 A.3d at 356–57 (quoting *DeBlase*, 665 A.2d at 431).

Here, the trial court found that the delay in bringing Merringer to trial did not violate Rule 600. Trial Court Opinion, 11/14/22, at 11–12. The trial court then found no constitutional violation based on the *Barker* factors:

Here, the length of the delay [between the filing of the complaint and commencement of trial] was 1,050 days. The length of the delay is sufficient to trigger further inquiry. *See Commonwealth v. Africa*, 569 A.2d 920, 923 (Pa. 1990) (delay of twenty-seven months between arrest and trial was sufficient to trigger further inquiry. Thus, we must consider the remaining factors.

The reason for the delay weighs in the Commonwealth's favor. The primary reason for delay was the suspension of jury trials due to the COVID-19 pandemic. Such a delay is outside of the Commonwealth's control. Next, [Merringer] asserted his rights by twice objecting to Commonwealth continuances. However, the Commonwealth's continuances and [Merringer's] objections were during the COVID-19 pandemic when jury trials had not yet resumed.

The final factor is prejudice to [the defendant].

> The fourth *Barker* factor, prejudice to the defendant, must be assessed within the context of those interests which the speedy trial right protects: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety and concern; and (3) limiting the impairment of the defense. The last consideration, impairment of or prejudice to the defense, represents the most serious of these three concerns, because the inability of a defendant adequately to prepare his case for trial skews the fairness of the entire system.

*DeBlase*, 665 A.2d at 436 (internal citations omitted).

Here, [Merringer] was not incarcerated while he awaited trial. Most importantly, [Merringer] has not alleged[] that the pre-trial delay impaired his defense. There is no evidence that [Merringer] changed his defense or that defense evidence was lost due to the pre-trial delay. Therefore, the fourth *Barker* factor does not weigh in [Merringer's] favor.

None of the *Barker* factors weigh heavily in favor of finding that the pretrial delay violated [Merringer's] constitutional right to a speedy trial. Furthermore, we see no reason to conclude that the delay caused by the COVID-19 pandemic was prohibited by the Sixth Amendment. Therefore, [Merringer's] claim that the pretrial delay violated his constitutional right to a speedy trial fails.

- 10 -

Trial Court Opinion, 11/14/22, at 13–14 (citations altered).

We agree with the trial court that the delay in prosecuting Merringer's case did not violate his constitutional rights to a speedy trial. Notably, Merringer has not suggested, under the facts of his case, how the Commonwealth was negligent in bringing him to trial or the delay caused him prejudice. *See DeBlase*, 665 A.2d at 438. Rather, Merringer was able to examine witnesses about inconsistencies in their memories and to present witnesses in his defense. Because Merringer has only generally asserted prejudice, the *Barker* factors weigh against him, and his constitutional challenge fails.

## 2. Expert Testimony About Child Sexual Abuse

Merringer argues that the trial court should have granted a new trial because Jo Ellen Bowman testified outside the scope of her expertise and beyond statutory authorization. During questioning on her qualifications, Ms. Bowman opined that a lack of medical evidence does not mean that penetration and sexual assault did not occur, and the trial court interjected to limit her from giving opinions before she was qualified. Merringer noted that Ms. Bowman testified outside the scope of a letter that had been provided to defense counsel. The trial court subsequently denied Merringer's motion for a new trial on this basis.

This Court reviews a trial court's evidentiary rulings, including rulings on the admissibility of expert testimony, for an abuse of discretion. *L.L.B. v.*

***T.R.B.***, 283 A.3d 859, 865 (Pa. Super. 2022). Likewise, we review a trial court's denial of a post-sentence motion for a new trial for an abuse of discretion. ***See Commonwealth v. Perrin***, 291 A.3d 337, 342–43 (Pa. 2023). "An abuse of discretion is more than merely an error of judgment but is rather the result of an error of law or is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will." ***Id.*** (citation omitted).

Section 5920 of the Judicial Code allows for expert testimony in certain proceedings, including criminal prosecutions for sexual offenses. 42 Pa.C.S.A. § 5920(a)(1), (2)(ii). The statute provides:

> (1) In a criminal proceeding subject to this section, a witness may be qualified by the court as an expert if the witness has specialized knowledge beyond that possessed by the average layperson based on the witness's experience with, or specialized training or education in, criminal justice, behavioral sciences or victim services issues, related to sexual violence …, that will assist the trier of fact in understanding the dynamics of sexual violence …, victim responses to sexual violence … and the impact of sexual violence … on victims during and after being assaulted.
>
> (2) If qualified as an expert, the witness may testify to facts and opinions regarding specific types of victim responses and victim behaviors.
>
> (3) The witness's opinion regarding the credibility of any other witness, including the victim, shall not be admissible.

42 Pa.C.S.A. § 5920(b)(1)–(3).

Here, Merringer does not explain how Ms. Bowman's testimony about the significance of medical evidence exceeds the bounds of Section 5920. Rather, Ms. Bowman mentioned medical examinations generally while explaining her training and experience under Section 5920(b)(1). When the

trial court believed that Ms. Bowman was starting to give opinions, it interjected and cautioned the prosecution not to get into opinions until she was qualified. This was a proper exercise of discretion.

Additionally, when Merringer believed Ms. Bowman's testimony exceeded her report, we note that he indicated as much but never formally objected or requested a curative instruction. The trial court then agreed with Merringer that further medical testimony would exceed the scope of Ms. Bowman's expertise. This ruling, too, was within the sound discretion of the trial court.

In its opinion, the trial court noted that Ms. Bowman's statement was substantially similar to testimony from Barbara Pyle, who the Commonwealth had called on the second day of trial. Nurse Pyle had explained that, especially in delayed reports of sexual abuse, physical evidence is not common. The trial court concluded that Ms. Bowman's statement was merely cumulative of other admissible evidence, so any error was harmless. It therefore denied Merringer's post-sentence motion for a new trial based on Ms. Bowman's testimony. Trial Court Opinion, 11/14/22, at 17–18.

We discern no abuse of discretion in this post-trial ruling. The trial court was free to consider Ms. Bowman's statement in the context of all the evidence at trial, including Nurse Pyle's testimony. Thus, the trial court's conclusion that any error in allowing Ms. Bowman's testimony was harmless was supported by the record. Its decision to deny Merringer's motion for a new

- 13 -

trial was not the product of bias, ill-will, or prejudice; manifestly unreasonable; or a misapplication or overriding of the law. This issue fails.

### 3. Lay Testimony About Signs of Deception

Merringer argues that the trial court erred by denying his motion for a new trial based on testimony from Corporal Reynolds. Like the previous issue, we review this claim for an abuse of discretion. *L.L.B.*, *supra*; *Perrin*, *supra*.

Pennsylvania Rules of Evidence 701 and 702 provide the framework for when lay witnesses and expert witnesses may give opinion testimony. First, Rule 701 provides that a lay witness may give opinion testimony only when three criteria are met.

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> (a) rationally based on the witness's perception;
>
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Our Supreme Court has observed that the first and second criteria outlined in Rule 701 are "self-explanatory, in that they simply require that a witness's opinion testimony be based upon personal knowledge and be helpful to the jury in understanding the witness's testimony or a fact at issue." *Commonwealth v. Jones*, 240 A.3d 881, 889 (Pa. 2020). However, as the high court emphasized, lay witnesses are precluded from giving "opinion

testimony based upon scientific, technical, or other specialized knowledge that falls within the realm of expert opinion testimony as outlined by Rule 702." *Id.* at 889–90.

Rule 702, in turn, provides the requirements for testimony by expert witnesses as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
>> (a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;
>>
>> (b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and
>>
>> (c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

In discussing this rule, the high court has "explained that expert testimony is permitted only as an aid to the jury when the subject matter is distinctly related to a science, skill, or occupation beyond the knowledge or experience of the average layman." *Jones*, 240 A.3d at 890 (citation omitted). It recognized that the standard for qualifying as an expert "is a liberal one[;] the witness need only have any reasonable pretension to specialized knowledge on the subject matter under investigation and the weight to be given to the expert's testimony is for the factfinder." *Id.* Finally, it has noted that expertise may be acquired by experience or through formal

education. *Id.* 889–90 (Pa. 2020) (some citations, quotations, and brackets omitted).

In *Jones*, the supreme court directly addressed whether opinion testimony by a police officer requires the officer to be qualified as an expert. There, the defendant was charged with sexual offenses against his child. *Id.* at 884. The Commonwealth presented testimony from a detective who had interviewed the child; the detective said that he had investigated hundreds of child sexual assault cases. *Id.* at 884–85. The Commonwealth then asked: "And in your training and experience, Detective, do kids often have trouble remembering each and every time when this is an ongoing incident?" *Id.* at 885. Over objection, the detective stated that they do; he also agreed that in his training and experience, victims have trouble recalling details from every incident and often confuse the timing of incidents. *Id.*

The Supreme Court held that this opinion testimony "was based upon scientific, technical, or other specialized knowledge within the scope of Rule 702" because the detective had testified based on his training and experience in investigating sexual assaults. *Id.* at 890. The court recognized that Rules 701 and 702 do not preclude a police officer from testifying both as a lay witness and an expert witness. *Id.* at 890–91 (adopting the reasoning of *Commonwealth v. Huggins*, 68 A.3d 962 (Pa. Super. 2013)). An officer's testimony is lay opinion under Rule 701 "if it is limited to what he observed or to other facts derived exclusively from a particular investigation." *Id.* at 890 (citation and alterations omitted). By contrast, the officer "testifies as an

- 16 -

expert when he brings the wealth of his experience as an officer to bear on those observations and makes connections for the jury based on that specialized knowledge." ***Id.*** (citation and alterations omitted). As the detective in ***Jones*** had given opinions based on specialized knowledge derived from his training and experience, his testimony was not admissible without proper qualification as an expert. ***Id.*** at 891. The admission of this testimony without proper foundation mandated a new trial. ***Id.***

Here, the trial court reasoned that Corporal Reynolds' testimony did not require qualification as an expert, and that ***Jones*** was distinguishable:

> We find that Corporal [Reynolds'] testimony was permissible lay witness testimony. Corporal [Reynolds'] testimony was based on his own observations of [Merringer] during the interrogation, rather than on any scientific, technical or other specialized knowledge. Corporal Reynolds never expressed an opinion as to whether [Merringer] was being truthful. Rather, he testified that [Merringer] displayed signs of deception during the interrogation. The distinction is subtle but important. Corporal Reynolds merely highlighted his perception of [Merringer's] verbal and non-verbal responses for the jury to consider in light of their own common knowledge, experience and understanding. Corporal Reynolds never represented that his conclusions were based on a degree of scientific certainty.
>
> [Unlike the testimony in ***Jones*** that was not within the average layperson's knowledge base,] Corporal [Reynolds] testified about his own personal observations. His personal observations were within the average layperson's knowledge base and thus not subject to expert qualification. ***See Commonwealth v. Boczkowski***, 846 A.2d 75, 97 (Pa. 2004) (lay witness testimony that the defendant was "serious" when he made an inculpatory statement to him was permissible lay witness testimony about the defendant's demeanor because it was within the realm of common knowledge and based on personal observation). Therefore, [Merringer's] argument that he is

- 17 -

> entitled to a new trial because of Corporal [Reynolds'] testimony is without merit.

Trial Court Opinion, 11/14/22, at 19–20.

We conclude that the trial court misapplied the law in finding that Corporal Reynolds' statements were permissible lay testimony. Corporal Reynolds did not just give observations from his interview of Merringer but also used the wealth of his experience as an investigator to interpret those observations and connect them for the jury based on his specialized knowledge. *Jones*, 240 A.3d at 890. The Commonwealth established that Corporal Reynolds had been trained in criminal investigation, specifically in interviews and interrogations. Corporal Reynolds previewed for the jury what Merringer said in a clip of his interview, and then he testified that Merringer's wording was "an embellishment." He continued to describe Merringer's verbal and non-verbal behaviors before each clip. After the clips, Corporal Reynolds testified that **based on his training and experience**, these were all signs of deception.

Like in *Jones*, the officer's interpretations of Merringer's words and behavior went beyond merely describing his own personal observations. The inquiry is not whether Corporal Reynolds stated outright that Merringer was being untruthful. Rather, it is whether in giving his testimony—that Merringer displayed signs of deception—he relied on his training and experience as an

officer and exceeded the knowledge base of an average lay juror.[3] Considering Corporal Reynolds' background and specialized knowledge, his descriptions of Merringer's words and behavior should have been subject to his qualification as an expert witness. ***Jones***, 240 A.3d at 891. Because Corporal Reynolds was not qualified as an expert at trial, it was error to allow such testimony.

As in ***Jones***, this error was not harmless. ***Id.*** at 891–92. This Court may address *sua sponte* whether an error was harmless. ***Commonwealth v. Hamlett***, 234 A.3d 486 (Pa. 2020). We do so here because if the error was harmless, a new trial is not warranted. The following passage from ***Jones*** guides our analysis:

> This case involved competing narratives about whether or not various sexual assaults occurred, making credibility a central issue. Whether intentional or unintentional, the Commonwealth's emphasis on [the detective's] training and experience prior to eliciting testimony concerning common victim behavior in response to sexual abuse likely signaled to the jury that he was qualified to offer such a response. As a result, the jury was able to draw an inference that the victim's behavior in this case was consistent with similarly situated victims, without any of the heightened reliability concerns that accompany expert testimony.

_____

[3] We do not hold that this subject ***always*** requires specialized knowledge. A useful comparison is ***Commonwealth v. Boczkowski***, 846 A.2d 75 (Pa. 2004), cited by the trial court. There, a fellow inmate said the defendant was "serious" when he made an inculpatory statement. ***Id.*** at 97. The inmate's impression of the defendant's demeanor, which was not purported to rely on any specialized training or experience, was admissible as lay testimony. ***Id.*** Here, unlike in ***Boczkowski***, Corporal Reynolds' conclusion that the behaviors he observed were signs of deception was based on his extensive training and experience in the field of criminal investigations and interviews. As such, it was an expert opinion.

- 19 -

We therefore cannot say with certainty that the jury did not place undue weight on the testimony, despite defense counsel's attempt to neutralize the effect of the testimony on cross-examination by eliciting a concession from the detective that an inability to recall dates and times of assaults could mean no assault occurred. Appellant is therefore entitled to a new trial.

*Jones*, 240 A.3d at 892.

Here, A.D. and N.M. testified that Merringer subjected them to years of sexual abuse, and Merringer and other witnesses denied that abuse occurred. This case came down to the jury's judgment of the credibility of these witnesses. The jury was improperly presented with testimony that, based on Corporal Reynolds' training and experience, Merringer showed signs of deception when he denied abusing his children. The Commonwealth argued from this conclusion that Merringer was lying, both in his interview and at trial. Like the high court in *Jones*, we cannot say that the jury did not unduly weigh this unqualified expert testimony. Therefore, Merringer is entitled to a new trial.

### 4. Conclusion

In sum, Merringer has not proven that the delay in his prosecution violated his constitutional rights to a speedy trial. Further, the trial court did not abuse its discretion by denying Merringer's motion for a new trial based on Jo Ellen Bowman's testimony that the court addressed within its discretion.

However, Corporal Reynolds testified that based on his training and experience, Merringer displayed signs of deception, including embellishments, during a recorded interview. The trial court misapplied the law, and therefore

abused its discretion, by overruling Merringer's objection to this testimony and denying Merringer's post-sentence motion for a new trial on this basis.

We therefore reverse Merringer's judgment of sentence and remand for a new trial. Based on our relief, we do not reach Merringer's fourth issue concerning cumulative error.

Judgment of sentence reversed. Case remanded for new trial. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/6/2023